UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:21-cv-62592

HAIMOV JEWELERS, LLC, a Florida
limited liability company

    Plaintiff
v.

CHRISTIAN J. WARD A/K/A CHRIS
HITMAKER, an individual

    Defendant.
_____/

**COMPLAINT**

**COMES NOW**, the Plaintiff, HAIMOV JEWELERS, LLC (the "HAIMOV" or the "Plaintiff"), by and through the undersigned counsel, and files this Complaint against the Defendant, CHRISTIAN J. WARD A/K/A CHRIS HITMAKER ("WARD") an individual, and, in support thereof, states as follows:

**JURISDICTION, VENUE, AND THE PARTIES**

1. This is an action to for breach of contract, conversion, unjust enrichment, and quantum meruit, and for damages concerning certain pieces of jewelry the Defendant took from the Plaintiff without paying for them, located in Miami-Dade County, Florida, exclusive of attorney's fees, interest, and costs.

2. The Plaintiff, HAIMOV JEWELERS, LLC, is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

3. The Defendant, CHRISTIAN J. WARD A/K/A CHRIS HITMAKER, is an individual, sui juris, and a resident of California.

4. The events that are subject to this Complaint arose in Miami-Dade County, Florida.

5. This Court has jurisdiction over the parties in this case and the subject matter of this action pursuant to 28 U.S.C.A. § 1332, based on the diversity of citizenship of the parties and because this action is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.00. Every issue of law and fact in this action is wholly between citizens of different states.

6. Venue is proper in the judicial district pursuant to 28 U.S.C.A. § 1391(b)(2).

## GENERAL ALLEGATIONS

7. On December 9, 2020, HAIMOV and WARD entered into a Consignment Memorandum (the "First Consignment Memorandum") whereby HAIMOV, as the Consignor and WARD as the Consignee agreed to enter into a business relationship for the sale of certain Consigned Valuables (collectively the "Consigned Valuables"). A copy of the First Consignment Memorandum is attached hereto and incorporated herein as **Exhibit "A."** HAIMOV is the owner of the Consigned Valuables.

8. The Consigned Valuables from the First Consignment Memorandum consisted of the following:

   a) Asst. Diamond Jewelry; $120,000.00; and
   b) 7.55ct stud earrings; $15,000.00.
      (the "Consigned Valuables")

9. On January 20, 2021, HAIMOV and WARD entered into another Consignment Memorandum (the "Second Consignment Memorandum") whereby HAIMOV, as the Consignor and WARD as the Consignee agreed to enter into a business relationship for the sale of additional Consigned Valuables (collectively the "Consigned Valuables"). A copy of the Second Consignment Memorandum is attached hereto and incorporated herein as **Exhibit "B."** HAIMOV is the owner of the Consigned Valuables.

10. The Consigned Valuables from the Second Consignment Memorandum consisted of the following:

a) Cuban bracelet; 18ct; 11.04ct; $15,000.00;
b) Cuban bracelet; 18ct; 19.60ct; $20,000.00;
c) Cuban bracelet; 18ct; 11.04ct; $15,000.00;
d) Cuban bracelet; 18ct; 19.60ct; $20,000.00;
e) Cuban chain; 14ct; 25ct; $40,000.00;
f) Baguette chains (3); 14ct; 22.95ct; $30,000.00 each; and
g) Patek Phillipe Rose Gold Watch; $50,000.00.
(collectively with the First Memorandum, the "Consigned Valuables").

11. Pursuant to the terms of the Consignment Memorandums, WARD was to serve as the sole and exclusive agent and representative of HAIMOV with respect to the Consigned Valuables, for the purpose of their sale. WARD was required to use his best efforts to sell the Consigned Valuables to a bona fide purchaser. WARD was required to pay to HAIMOV the total sum amount (the "Total Sum") reflected on the Consignment Memorandums. WARD's authority to sell the Consigned Valuables was conditioned upon payment to HAIMOV in the amount of the Total Sum.

12. The Total Sum of the Consigned Valuables for the First Consignment Memorandum was $135,000.00. The Total Sum of the Consigned Valuables for the Second Consignment Memorandum was $250,000.00. Collectively, the Total Sum of the Consigned Valuables due by WARD for both the Consignment Memorandums was $385,000.00.

13. Further, the parties agreed, pursuant to the Consignment Memorandums, that WARD had a fiduciary relationship to HAIMOV and owed a duty to HAIMOV to deal fairly and honestly, including a good faith effort to promote and sell the Consigned Valuables, to account and disclose promptly all information relevant to WARD's representation of HAIMOV.

14. Pursuant to the Consignment Memorandums, the consignment period commenced upon the execution of the Consignment Memorandums, or when WARD took possession of the Consigned Valuables, whichever event came first. The consignment period expired on the end date noted in the Consignment Memorandums, or by HAIMOV's demand for return of the Consigned Valuables and/or payment, or WARD's return of the Consigned Valuables. HAIMOV was also entitled to terminate the consignment period at any time for any reason at its own discretion.

15. There was no set end date to the consignment period for the First Consignment Memorandum, so either HAIMOV had to demand the return of the Consigned Valuables and/or payment, or WARD had to return the Consigned Valuables in order for the Consignment Memorandums to expire. HAIMOV could also terminate the First Consignment Memorandum at its discretion.

16. For the Second Consignment Memorandum, the end date was January 22, 2021.

17. Upon execution of the Consignment Memorandums, HAIMOV delivered the Consigned Valuables to WARD and WARD acknowledged receipt of same.

18. WARD did not pay the Total Sum due to HAIMOV for the Consigned Valuables and pursuant to the Second Consignment Memorandum, he failed to return the Consigned Valuables by January 22, 2021.

19. As a result of WARD's actions, HAIMOV has suffered damages.

20. Before filing this action, HAIMOV demanded WARD return of the Consigned Valuables however WARD has failed and/or refused to return them. A copy of the demands made by HAIMOV to WARD are attached hereto as **Composite Exhibit "C."**

21. HAIMOV is obligated to pay its attorney reasonable fees for the attorney's services.

22. HAIMOV is entitled to attorney's fees pursuant to the First Consignment Memorandum and the Second Consignment Memorandum.

23. HAIMOV has performed all statutory prerequisites and conditions precedent or they have been waived or excused, and HAIMOV is entitled to recovery herein.

## COUNT I
## BREACH OF THE FIRST CONSIGNMENT MEMORANDUM

24. This is an action by the Plaintiff, HAIMOV JEWELERS, LLC, against the Defendant, CHRISTER J. WARD A/K/A CHRIS HITMAKER for breach of the First Consignment Memorandum, and for money damages, exclusive of interest, attorney's fees and costs.

25. HAIMOV readopts, realleges, and reincorporates paragraphs 1 through 23 above as if fully set forth herein.

26. On December 9, 2020, HAIMOV and WARD entered into the First Consignment Memorandum, whereby HAIMOV, as the Consignor and WARD as the Consignee agreed to enter into a business relationship for the sale of the Consigned Valuables. See **Exhibit "A",** the First Consignment Memorandum.

27. HAIMOV is the owner of the Consigned Valuables.

28. Pursuant to the terms of the First Consignment Memorandum, WARD was to serve as the sole and exclusive agent and representative of HAIMOV with respect to the Consigned Valuables, for the purpose of their sale. WARD was required to use his best efforts to sell the Consigned Valuables to a bona fide purchaser. WARD was required to pay to HAIMOV the Total Sum amount reflected on the First Consignment Memorandum. WARD's authority to sell the Consigned Valuables was conditioned upon payment to HAIMOV in the amount of the Total Sum.

29. The Total Sum of the Consigned Valuables for the First Consignment Memorandum was $135,000.00.

30. Upon execution of the First Consignment Memorandum, HAIMOV delivered the Consigned Valuables to WARD and WARD acknowledged receipt of same.

31. There was no set end date to the consignment period for the First Consignment Memorandum, so either HAIMOV had to demand the return of the Consigned Valuables and/or payment, or WARD had to return the Consigned Valuables in order for the Consignment Memorandums to expire. HAIMOV could also terminate the First Consignment Memorandum at its discretion.

32. WARD did not pay the Total Sum due to HAIMOV for the Consigned Valuables and did not return the Consigned Valuables.

33. HAIMOV demanded WARD return the Consigned Valuables, but WARD failed and/or refused to return them. See **Composite Exhibit "C."**

34. As a result of WARD's actions, HAIMOV has suffered damages.

35. HAIMOV is obligated to pay its attorney reasonable fees for the attorney's services. HAIMOV is entitled to attorney's fees pursuant to the First Consignment Memorandum.

36. HAIMOV has performed all statutory prerequisites and conditions precedent or they have been waived or excused, and HAIMOV is entitled to recovery herein.

## COUNT II
## BREACH OF THE SECOND CONSIGNMENT MEMORANDUM

37. This is an action by the Plaintiff, HAIMOV JEWELERS, LLC, against the Defendant, CHRISTOPHER J. WARD A/K/A CHRIS HITMAKER for breach of the Second Consignment Memorandum, and for money damages, exclusive of interest, attorney's fees and costs.

38. HAIMOV readopts, realleges, and reincorporates paragraphs 1 through 23 above as if fully set forth herein.

39. On January 20, 2021, HAIMOV and WARD entered into the Second Consignment Memorandum whereby HAIMOV, as the Consignor and WARD as the Consignee agreed to enter

into a business relationship for the sale of the Consigned Valuables. See **Exhibit "B"**, the Second Consignment Memorandum. HAIMOV is the owner of the Consigned Valuables.

40. Pursuant to the terms of the Second Consignment Memorandum, WARD was to serve as the sole and exclusive agent and representative of HAIMOV with respect to the Consigned Valuables, for the purpose of their sale. WARD was required to use his best efforts to sell the Consigned Valuables to a bona fide purchaser. WARD was required to pay to HAIMOV the Total Sum amount reflected on the Second Consignment Memorandum. WARD's authority to sell the Consigned Valuables was conditioned upon payment to HAIMOV in the amount of the Total Sum.

41. The Total Sum of the Consigned Valuables for the Second Consignment Memorandum was $250,000.00

42. Upon execution of the Second Consignment Memorandum, HAIMOV delivered the Consigned Valuables to WARD and WARD acknowledged receipt of same.

43. WARD breached the Second Consignment Memorandum by failing to pay the Total Sum due to HAIMOV for the Consigned Valuables and by failing to return the Consigned Valuables by January 22, 2021.

44. WARD did not pay the Total Sum due to HAIMOV for the Consigned Valuables and did not return the Consigned Valuables.

45. HAIMOV demanded WARD return the Consigned Valuables, but WARD failed and/or refused to return them. See **Composite Exhibit "C."**

46. As a result of WARD's actions, HAIMOV has suffered damages.

47. HAIMOV is obligated to pay its attorney reasonable fees for the attorney's services. HAIMOV is entitled to attorney's fees pursuant to the Second Consignment Memorandum.

48. HAIMOV has performed all statutory prerequisites and conditions precedent or they have been waived or excused, and HAIMOV is entitled to recovery herein.

## COUNT III
## CONVERSION

49. This is an action by the Plaintiff, HAIMOV JEWELERS, LLC, against the Defendant, CHRISTIAN J. WARD A/K/A CHRIS HITMAKER for conversion, and for money damages, exclusive of interest, attorney's fees and costs.

50. Plaintiff readopts, realleges, and reincorporates paragraphs 1 through 23 as if fully set forth herein.

51. HAIMOV consigned its property, the Consigned Valuables to WARD in return for payment or for the return of the Consigned Valuables.

52. WARD has paid none of the amount due to HAIMOV and without authority, WARD has retained possession of the Consigned Valuables and has not returned the Consigned Valuables. WARD's unauthorized possession has deprived HAIMOV of the Consigned Valuables. WARD has converted the Consigned Valuables for his own personal use and deprived HAIMOV of the Consigned Valuables.

53. As a direct and proximate result of WARD's retaining and converting of the Consigned Valuables, HAIMOV has sustained damages in the amount of the value of the Consigned Valuables, which is $385,000.00, exclusive of interest, costs and attorney's fees.

54. HAIMOV is obligated to pay its attorney reasonable fees for the attorney's services.

## COUNT IV
## QUANTUM MERUIT

55. This is an action by the Plaintiff, HAIMOV JEWELERS, LLC, against the Defendant, CHRISTIAN J. WARD A/K/A CHRIS HITMAKER, for quantum meruit, and for money damages, exclusive of interest, attorney's fees and costs.

56. Plaintiff readopts, realleges, and reincorporates paragraphs 1 through 23 above as if fully set forth herein.

57. Plaintiff, HAIMOV, consigned the Consigned Valuables to Defendant in return for payment or for the return of the Consigned Valuables.

58. Defendant, WARD, failed to pay the amount due to HAIMOV for the Consigned Valuables in and failed to return the Consigned Valuables.

59. At all material times, Defendant, WARD, was aware of the fact that the Consigned Valuables taken and kept were the property of HAIMOV.

60. HAIMOV conferred a benefit on WARD in that the Consigned Valuables were taken and retained by the Defendant without paying the amount due, all of which were intentionally taken and accepted by WARD.

61. The reasonable value of the Consigned Valuables for which HAIMOV has had stolen totals $385,000.00.

62. HAIMOV has demanded payment for the value of the Consigned Valuables, but WARD has failed or refused to make payments.

63. The principal amount of $385,000.00 owed to HAIMOV remains unpaid.

64. HAIMOV has been damaged by Defendant's failure and/or refusal to return the Consigned Valuables and/or pay back the amount owed on the Consigned Valuables. The circumstances are such that it would be inequitable for the Defendant to retain the benefit of possessing the Consigned Valuables without paying their reasonable value for them to HAIMOV.

## COUNT V
## UNJUST ENRICHMENT

65. This is an action by the Plaintiff, HAIMOV JEWELERS, LLC, against the Defendant, CHRISTIAN J. WARD A/K/A CHRIS HITMAKER, for unjust enrichment, and for money damages, exclusive of interest, attorney's fees and costs.

66. Plaintiff readopts, realleges, and reincorporates paragraphs 1 through 23 above as if fully set forth herein.

67. Plaintiff, HAIMOV, consigned the Consigned Valuables to Defendant in return for payment or for the return of the Consigned Valuables.

68. Defendant, WARD has been unjustly enriched by failing to pay the amount due for the Consigned Valuables and for the improper retention of the Consigned Valuables.

69. Defendant, WARD's, improper retention and failure to pay the amount due has continued despite his knowledge of the impropriety of the retention and failure to pay, and despite HAIMOV's demand to WARD to pay for the value of the Consigned Valuables that WARD took.

70. In these circumstances, WARD should be obligated to return HAIMOV's property, the Consigned Valuables, or pay the reasonable value of the Consigned Valuables, which is $385,000.00.

71. It would be unjust for WARD to retain the benefits that he received as a result of him retaining the Consigned Valuables without paying the value of the Consigned Valuables in the amount of $385,000.00.

72. HAIMOV has been damaged by Defendant's failure and/or refusal to return the Consigned Valuables and/or pay back the amount owed on the Consigned Valuables. The circumstances are such that it would be inequitable for the Defendant to retain the benefit of possessing the Consigned Valuables without paying their reasonable value for them to HAIMOV.

## COUNT VI
## BREACH OF FIDUCIARY DUTY PURSUANT TO THE FIRST CONSIGNMENT MEMORANDUM

73. This is an action by the Plaintiff, HAIMOV JEWELERS, LLC, against the Defendant, CHRISTIAN J. WARD, for breach of fiduciary of the First Consignment Memorandum, and for money damages, exclusive of interest, attorney's fees and costs.

74. Plaintiff readopts, realleges, and reincorporates paragraphs 1 through 23 above as if fully set forth herein.

75. On December 9, 2020, HAIMOV and WARD entered into the First Consignment Memorandum whereby HAIMOV, as the Consignor and WARD as the Consignee agreed to enter into a business relationship for the sale of the Consigned Valuables. See **Exhibit "A,"** First Consignment Memorandum.

76. The parties agreed, pursuant to the First Consignment Memorandum, that WARD had a fiduciary relationship to HAIMOV and owed a duty to HAIMOV to deal fairly and honestly, including a good faith effort to promote and sell the Consigned Valuables, to account and disclose promptly all information relevant to WARD's representation of HAIMOV.

77. There was no set end date to the consignment period for the First Consignment Memorandum, so either HAIMOV had to demand the return of the Consigned Valuables and/or payment, or WARD had to return the Consigned Valuables in order for the Consignment Memorandums to expire. HAIMOV could also terminate the First Consignment Memorandum at its discretion.

78. Upon execution of the First Consignment Memorandum, HAIMOV delivered the Consigned Valuables to WARD and WARD acknowledged receipt of same.

79. WARD did not pay the Total Sum due to HAIMOV for the Consigned Valuables.

80. HAIMOV demanded WARD return the Consigned Valuables, but WARD failed and/or refused to return them. See **Composite Exhibit "C."**

81. Further, pursuant to the First Consignment Memorandum, he failed to return the Consigned Valuables upon demand by HAIMOV.

82. WARD breached his fiduciary duty by:
   a) failing to pay the Total Sum due to HAIMOV;

    b) failing to return the Consigned Valuables;

    c) failing to deal fairly and honestly;

    d) failing to deal in a good faith effort to promote and sell the Consigned Valuables; and

    e) failing to account and disclose promptly all information relevant to WARD's representation of HAIMOV.

83. As a result of WARD's actions, HAIMOV has suffered damages.

84. HAIMOV is obligated to pay its attorney reasonable fees for the attorney's services. HAIMOV is entitled to attorney's fees pursuant to the First Consignment Memorandum.

85. HAIMOV has performed all statutory prerequisites and conditions precedent or they have been waived or excused, and HAIMOV is entitled to recovery herein.

## COUNT VII
## BREACH OF FIDUCIARY DUTY PURSUANT TO THE SECOND CONSIGNMENT MEMORANDUM

86. This is an action by the Plaintiff, HAIMOV JEWELERS, LLC, against the Defendant, CHRISTIAN J. WARD, for breach of fiduciary of the Second Consignment Memorandum, and for money damages, exclusive of interest, attorney's fees and costs.

87. Plaintiff readopts, realleges, and reincorporates paragraphs 1 through 23 above as if fully set forth herein.

88. On January 20, 2021, HAIMOV and WARD entered into the Second Consignment whereby HAIMOV, as the Consignor and WARD as the Consignee agreed to enter into a business relationship for the sale of additional Consigned Valuables. See **Exhibit "B,"** Second Consignment Memorandum.

89. The parties agreed, pursuant to the Second Consignment Memorandum, that WARD had a fiduciary relationship to HAIMOV and owed a duty to HAIMOV to deal fairly and honestly,

including a good faith effort to promote and sell the Consigned Valuables, to account and disclose promptly all information relevant to WARD's representation of HAIMOV.

90. For the Second Consignment Memorandum, the end date was January 22, 2021.

91. Upon execution of the Second Consignment Memorandum, HAIMOV delivered the Consigned Valuables to WARD and WARD acknowledged receipt of same.

92. WARD did not pay the Total Sum due to HAIMOV for the Consigned Valuables.

93. WARD failed to return the Consigned Valuables by January 22, 2021.

94. HAIMOV demanded WARD return the Consigned Valuables, but WARD failed and/or refused to return them. See **Composite Exhibit "C."**

95. WARD breached his fiduciary duty by:

   a) failing to pay the Total Sum due to HAIMOV;

   b) failing to return the Consigned Valuables;

   c) failing to deal fairly and honestly;

   d) failing to deal in a good faith effort to promote and sell the Consigned Valuables; and

   e) failing to account and disclose promptly all information relevant to WARD's representation of HAIMOV.

96. As a result of WARD's actions, HAIMOV has suffered damages.

97. HAIMOV is obligated to pay its attorney reasonable fees for the attorney's services. HAIMOV is entitled to attorney's fees pursuant to the Second Consignment Memorandum.

98. HAIMOV has performed all statutory prerequisites and conditions precedent or they have been waived or excused, and HAIMOV is entitled to recovery herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, HAIMOV JEWELERS, LLC, prays that this Court enter

judgment in its favor on each and every claim for relief set forth above and award its relief, including, but not limited to the following:

a) that Plaintiff be awarded damages against Defendant, CHRISTOPHER J. WARD A/K/A CHRIS HITMAKER for breach of the First Consignment Memorandum and the Second Consignment Memorandum

b) that Plaintiff be awarded damages in the amount of the totality of the sums owed by Defendant, CHRISTIAN J. WARD, A/K/A CHRIS HITMAKER for conversion, quantum merit, and unjust enrichment;

c) that Plaintiff be awarded damages against Defendant, CHRISTOPHER J. WARD A/K/A CHRIS HITMAKER for breach of his fiduciary duty pursuant to the First Consignment Memorandum and the Second Consignment Memorandum;

d) that Defendant be ordered to pay Plaintiff's attorney's fees and costs pursuant to the First Consignment Memorandum and the Second Consignment Memorandum; and

e) for such other relief this Court deems just and proper.

By: /s/ Joseph S. Van de Bogart
Joseph S. Van de Bogart, Esq.
Florida Bar No: 084764
VAN DE BOGART LAW, P.A.
2850 North Andrews Avenue
Fort Lauderdale, FL 33311
Telephone: (954) 567-6032
Facsimile: (954) 568-2152
Email Joseph@vandebogartlaw.com

MEMO [X] INVOICE [ ]

# HAIMOV JEWELERS LLC
33 NORTHEAST 1st STREET • Miami, FL 33132
TELS.: (305) 760-8600 • 888.HAIMOVS (424-6687)
FAX: (305) 415-9592
WWW.HAIMOV.COM

## CONSIGNMENT MEMORANDUM

**NOTICE**
(Section to be completed only upon termination of the consignment period and payment/return by Consignee)

[ ] Consigned Valuables Recovered
[ ] Total Sum Paid In Full
Date Of Payment Return

Signature: _____
Haimov, LLC

DATE: 12/9/20

**Consignee Information**

NAME: CHRIS WARDE

BUSINESS NAME: Hit Maker

ADDRESS: _____

BUSINESS ADDRESS: REGENCE DAD (273) [REDACTED]

TEL: _____

CELL: _____

GUARANTOR SS#: _____

CONSIGNMENT END DATE: _____

### DESCRIPTION OF CONSIGNED VALUABLES

| WEIGHT | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| | Asst Diamond Jewelry | | 255,000 — |
| | Trade w/ old Jewelry | | -135,000 |
| | w/T | | 120,000 — |
| | | | |
| | | | |
| | 7.55ct Stud Ear | | 15,000 |
| | Trade 6.00ct Youda | | |

Exhibit "A"

The goods described above remain Haimov Jewelers, LLC's property and subject to our order and shall be returned to us on demand.

| | |
|---|---|
| SUB TOTAL | |
| SHIPPING | |
| TOTAL SUM | |

Signature: _____

Name: Chris War[de]

Individually as Guarantor and as agent of Consignee Business.

**WE BUY LOOSE DIAMONDS, MELEE, GOLD WATCHES AND ANTIQUES**

THIS CONSIGNMENT MEMORANDUM is made by and between Hamimov Jewelers LLC. ("Consignor") and the Consignee Business and Guarantor (jointly referred to herein in the singular as "Consignee"). Consignor is in the business of selling and consigning for sale jewels, diamonds, precious metals, stones, and other valuables (herein referred to as "Valuables"). Consignee is in the business of selling Valuables. Consignor is the owner of the Consigned Valuables described in the Memorandum. Consignor and Consignee hereto wish to enter into a business relationship for the sale of the Consigned Valuables, for the benefit of the Consignor.

NOW, THEREFORE, in consideration of these premises, and of the mutual promises and undertakings set forth below, the parties hereto agree as follows:

1) Delivery: Simultaneously with the execution of this Memorandum by Consignee, Consignor has delivered the Valuables to Consignee. By executing this Memorandum, Consignee acknowledges receipt of the Consigned Valuables in perfect and pristine condition, fit for sale to the public or at least the price noted in this Memorandum.

2) Exclusive Consignee: Purposes. For the duration of the Consignment Period only. Consignor hereby appoints the Consignee, and the Consignee hereby accepts such appointment, to serve as the sole and exclusive agent and representative of the Consignee with respect to the Consigned Valuables, and consigned under this Memorandum, for the purpose of sale. Consignee shall not permit the Consigned Valuables to be sued for any other purposes without the written consent of the Consignor. This Memorandum applies only to the Consigned Valuables consigned under this Memorandum and does not make the Consignee a general agent for any other property or valuables. This Memorandum is not an installment plan.

3) Consignment. Consignor hereby consigns the Consigned Valuables to Consignee, and the Consignee accepts said consignment. Consignee shall use its best efforts to sell the Consigned Valuables to a bona fide purchaser. Consignee shall pay Consignor the Total Sum amount reflected on this Memorandum. The Consignee's authority to sell the Consigned Valuables is conditioned upon payment to the Consignor of the Total Sum. Consignee shall transfer the sale proceeds to Consignor immediately upon sale. Consignor will execute a Bill of Sale to the purchaser of the Consigned Valuables upon receipt of the sale proceeds.

4) Consignment Period, Effective Date, and Consignor Access. This Memorandum and Consignor's rights as consignor shall become effective immediately upon the execution of this Memorandum, unless Consignee is already in possession of the Consigned Valuables, in which case Consignor's rights under this Agreement and as consignor are retroactively effective from the moment Consignee took possession of the Consigned Valuables. The Consignment Period is limited to the Consignment Period End Date noted in this Memorandum, but may be terminated by either (a) Consignor's verbal or written demand for return of the Consigned Valuables and/or payment, or (b) Consignee's return of the Consigned Valuables to Consignor. Consignor may, at its own discretion, terminate the Consignment Period at any time and for any reason. If Consignee has provided to Consignor post-dated checks, Consignor may deposit said checks immediately upon the termination of the Consignment Period.

5) Fiduciary Relationship. The parties agree that the consignee, as agent for the Consignor, has a fiduciary relationship to the Consignor and owes a duty to the Consignor to deal fairly and honestly, including a good faith effort to promote and sell the Consigned Valuables with clear identification of the Consignor's name on the Consigned Valuables, and to account periodically and disclose promptly all information relevant to the Consignee's representation of the Consignor. Title to the Consigned Valuables consigned to the Consignee shall remain in the Consignor until the Consignor has been paid the full amount owning from the sale of the Consigned Valuables, on which title will pass directly to the purchaser of the Consigned Valuables. The total sum shall be held by the Consignee in trust for Consignor. The Consignee shall pay all amounts due the Consignor immediately upon termination of the Consignment Period. Failure to pay when due shall result in an additional 2% fee due to Consignor, as well as entitle Consignor to enforce this Memorandum for recovery of the Consigned Valuables, damages, and any other relief that may be available to it.

6) Notice of Consignment. The consignee shall place at least two (2) Notices by means of a clear and conspicuous sign in full public view at all times, in the following manner and location:

   a. First Notice. Consignee shall place the following Notice immediately in front of or beside the Consigned Valuables at all times: "THIS ITEM IS BEING SOLD SUBJECT TO A CONTRACT CONSIGNMENT."

   b. Second Notice. Consignee shall place the following Notice in a clear and conspicuous place on the premises where the Consigned Valuables is located: "SOME OF THE VALUABLES THAT ARE FOR SALE HERE ARE BEING SOLD SUBJECT TO A CONTRACT FOR CONSIGNMENT."

7) Responsibility for Loss or Damage. The Consignee shall be responsible for the safekeeping of the Consigned Valuables while it is in its custody, including from the time the Consigned Valuables leaves the Consignor's physical possession, up to and until the Consigned Valuables is returned to the Consignor in the conditional delivered or until full payment is made for that Consigned Valuables. The Consignee shall be strictly liable to the Consignor for the loss of or damage to the Consigned Valuables for any reason whatsoever, said liability being to the full amount the Consignor would have received from the Consignee had the Consigned Valuables been sold in accordance with this Memorandum. In this regard, the Consignee covenants that the Consigned Valuables will be insured against all risk for its full value under the Consignee's insurance policy. Any and all insurance proceeds on account of any casualty will be paid to the Consignor. The Consignee shall provide the Consignor with all relevant information about its insurance coverage for the Consigned Valuables if the Consignor if the Consignor requests this information. Additionally, Guarantor personally and individually guarantees payment to the Consignor in full of the Total Sum, and may not be relieved of that personal and individual guarantee for any reason. The Guarantor's personal and unconditional guarantee to Consignor of payment in full is a material term to induce Consignor's agreement to cosign the Consigned Valuables to Consignee.

8) Consignee's Duty Concerning Creditors. Consignee shall not file for bankruptcy or take any action which may subject Consignee to bankruptcy proceedings or assignments to the benefit of creditors. In the event that any of Consignee's creditors should institute any collections proceeding or enforcement of any lien rights with respect to any Consignee's property, Consignee shall immediately and without delay notify Consignor. Consignee shall further put Consignee's creditors on notice that it does not own the Consigned Valuables, and is only a consignee having no title the Consigned Valuables.

9) Complete Agreement. This Memorandum constitutes the entire understanding and agreement with respect to the subject to the subject matter hereof and supersedes all proposals, oral or written, all negotiations, conversations, or discussions between or among the parties relating to the subject matter of the Memorandum and all past dealing or industry custom.

10) WAIVER OF TRIAL BY JURY. CONSIGNOR AND CONSIGNEE VOLUNTARILY, EXPRESSLY, INTENTIONALLY AND KNOWINGLY WAIVE AND DISCLAIM ANY AND ALL RIGTH ANY OF THEM MAY HAVE TO TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, IN CONNECTION WITH OR IN ANY MANNER RELATED TO THE CONSIGNED VALUABLES, THIS MEMORANDUM OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WRITTEN OR VERBAL) OR ACTIONS OF EITHER PARTY HERETO.

11) Governing Laws and Situs. This Memorandum and legal relations between the Parties hereto shall be construed and enforced in accordance with the laws of the State of Florida and venue of all suites brought hereunder by and between the Parties shall be initiated, prosecuted and defended in Miami-Dade County, Florida. And the Parties expressly and voluntarily submit to the jurisdiction of the same.

12) Attorneys Fees In the event of any litigation arising by virtue or related to this Memorandum, the prevailing party shall be entitled to a responsible sum as and for his or its or their attorneys' fees and court costs in such litigation.

Signature._____   Name:_____   _____ Date:_____

# HAIMOV JEWELERS LLC

33 NORTHEAST 1st STREET • Miami, FL 33132
TELS.: (305) 760-8600 • 888.HAIMOVS (424-6687)
FAX: (305) 415-9592
WWW.HAIMOV.COM

MEMO [X]   INVOICE [ ]

**NOTICE**
(Section to be completed only upon termination of the consignment period and payment/return by Consignee)

[ ] Consigned Valuables Recovered
[ ] Total Sum Paid In Full
Date Of Payment Return

Signature:
Haimov, LLC

## CONSIGNMENT MEMORANDUM

DATE: 1/20/21

### Consignee Information

NAME: Chris Hitmaker
BUSINESS NAME:
ADDRESS:
BUSINESS ADDRESS:
TEL: 773-█████
CELL: 1/22/21
GUARANTOR SS#:
CONSIGNMENT END DATE: 1/22/21

### DESCRIPTION OF CONSIGNED VALUABLES

| WEIGHT | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 34.20G | Cuban bracelet 18kt 11.04ct | | $15,000 |
| 49.60G | Cuban bracelet 18kt 19.60ct | | $20,000 |
| 34.20G | Cuban bracelet 18kt 11.04ct | | $15,000 |
| 51.0G | Cuban bracelet 18kt 19.60ct | | $20,000 |
| 192G | Cuban chain 14kt 25ct | | $40,000 |
| | Baguette chain 14kt 22.5ct | X3 | $20,000 (3 pc) EACH (60k ttl) |
| | Patek Philip Rose Gold | | $50,000 |

The goods described above remain Haimov Jewelers, LLC's property and subject to our order and shall be returned to us on demand.

| | |
|---|---|
| SUB TOTAL | |
| SHIPPING | |
| TOTAL SUM | $250,000 |

Signature:                Name:
Individually as Guarantor and as agent of Consignee Business.

**WE BUY LOOSE DIAMONDS, MELEE, GOLD WATCHES AND ANTIQUES**

Exhibit "B"

THIS CONSIGNMENT MEMORANDUM is made by and between Hamimov Jewelers LLC. ("Consignor") and the Consignee Business and Guarantor (jointly referred to herein in the singular as "Consignee"). Consignor is in the business of selling and consigning for sale jewels, diamonds, precious metals, stones, and other valuables ( herein referred to as "Valuables"). Consignee is in the business of selling Valuables. Consignor is the owner of the Consigned Valuables described in the Memorandum. Consignor and Consignee hereto wish to enter into a business relationship for the sale of the Consigned Valuables, for the benefit of the Consignor.

NOW, THEREFORE, in consideration of these premises, and of the mutual promises and undertakings set forth below, the parties hereto agree as follows:

1) Delivery: Simultaneously with the execution of this Memorandum by Consignee, Consignor has delivered the Valuables to Consignee. By executing this Memorandum, Consignee acknowledges receipt of the Consigned Valuables in perfect and pristine condition, fit for sale to the public or at least the price noted in this Memorandum.

2) Exclusive Consignee: Purposes. For the duration of the Consignment Period only. Consignor hereby appoints the Consignee, and the Consignee hereby accepts such appointment, to serve as the sole and exclusive agent and representative of the Consignee with respect to the Consigned Valuables, and consigned under this Memorandum, for the purpose of sale. Consignee shall not permit the Consigned Valuables to be sued for any other purposes without the written consent of the Consignor. This Memorandum applies only to the Consigned Valuables consigned under this Memorandum and does not make the Consignee a general agent for any other property or valuables. This Memorandum is not an installment plan.

3) Consignment. Consignor hereby consigns the Consigned Valuables to Consignee, and the Consignee accepts said consignment. Consignee shall use its best efforts to sell the Consigned Valuables to a bona fide purchaser. Consignee shall pay Consignor the Total Sum amount reflected on this Memorandum. The Consignee's authority to sell the Consigned Valuables is conditioned upon payment to the Consignor of the Total Sum. Consignee shall transfer the sale proceeds to Consignor immediately upon sale. Consignor will execute a Bill of Sale to the purchaser of the Consigned Valuables upon receipt of the sale proceeds.

4) Consignment Period, Effective Date, and Consignor Access. This Memorandum and Consignor's rights as consignor shall become effective immediately upon the execution of this Memorandum, unless Consignee is already in possession of the Consigned Valuables, in which case Consignor's rights under this Agreement and as consignor are retroactively effective from the moment Consignee took possession of the Consigned Valuables. The Consignment Period is limited to the Consignment Period End Date noted in this Memorandum, but may be terminated by either (a) Consignor's verbal or written demand for return of the Consigned Valuables and/or payment, or (b) Consignee's return of the Consigned Valuables to Consignor. Consignor may, at its own discretion, terminate the Consignment Period at any time and for any reason. If Consignee has provided to Consignor post-dated checks, Consignor may deposit said checks immediately upon the termination of the Consignment Period.

5) Fiduciary Relationship. The parties agree that the consignee, as agent for the Consignor, has a fiduciary relationship to the Consignor and owes a duty to the Consignor to deal fairly and honestly, including a good faith effort to promote and sell the Consigned Valuables with clear identification of the Consignor's name on the Consigned Valuables, and to account periodically and disclose promptly all information relevant to the Consignee's representation of the Consignor. Title to the Consigned Valuables consigned to the Consignee shall remain in the Consignor until the Consignor has been paid the full amount owning from the sale of the Consigned Valuables, on which title will pass directly to the purchaser of the Consigned Valuables. The total sum shall be held by the Consignee in trust for Consignor. The Consignee shall pay all amounts due the Consignor immediately upon termination of the Consignment Period. Failure to pay when due shall result in an additional 2% fee due to Consignor, as well as entitle Consignor to enforce this Memorandum for recovery of the Consigned Valuables, damages, and any other relief that may be available to it.

6) Notice of Consignment. The consignee shall place at least two (2) Notices by means of a clear and conspicuous sign in full public view at all times, in the following manner and location:

a. First Notice. Consignee shall place the following Notice immediately in front of or beside the Consigned Valuables at all times:
"THIS ITEM IS BEING SOLD SUBJECT TO A CONTRACT CONSIGNMENT."

b. Second Notice. Consignee shall place the following Notice in a clear and conspicuous place on the premises where the Consigned Valuables is located: "SOME OF THE VALUABLES THAT ARE FOR SALE HERE ARE BEING SOLD SUBJECT TO A CONTRACT FOR CONSIGNMENT."

7) Responsibility for Loss or Damage. The Consignee shall be responsible for the safekeeping of the Consigned Valuables while it is in its custody, including from the time the Consigned Valuables leaves the Consignor's physical possession, up to and until the Consigned Valuables is returned to the Consignor in the conditional delivered or until full payment is made for that Consigned Valuables. The Consignee shall be strictly liable to the Consignor for the loss of or damage to the Consigned Valuables for any reason whatsoever, said liability being to the full amount the Consignor would have received from the Consignee had the Consigned Valuables been sold in accordance with this Memorandum. In this regard, the Consignee covenants that the Consigned Valuables will be insured against all risk for its full value under the Consignee's insurance policy. Any and all insurance proceeds on account of any casualty will be paid to the Consignor. The Consignee shall provide the Consignor with all relevant information about its insurance coverage for the Consigned Valuables if the Consignor if the Consignor requests this information. Additionally, Guarantor personally and individually guarantees payment to the Consignor in full of the Total Sum, and may not be relieved of that personal and individual guarantee for any reason. The Guarantor's personal and unconditional guarantee to Consignor of payment in full is a material term to induce Consignor's agreement to cosign the Consigned Valuables to Consignee.

8) Consignee's Duty Concerning Creditors. Consignee shall not file for bankruptcy or take any action which may subject Consignee to bankruptcy proceedings or assignments to the benefit of creditors. In the event that any of Consignee's creditors should institute any collections proceeding or enforcement of any lien rights with respect to any Consignee's property, Consignee shall immediately and without delay notify Consignor. Consignee shall further put Consignee's creditors on notice that it does not own the Consigned Valuables, and is only a consignee having no title the Consigned Valuables.

9) Complete Agreement. This Memorandum constitutes the entire understanding and agreement with respect to the subject to the subject matter hereof and supersedes all proposals, oral or written, all negotiations, conversations, or discussions between or among the parties relating to the subject matter of the Memorandum and all past dealing or industry custom.

10) WAIVER OF TRIAL BY JURY. CONSIGNOR AND CONSIGNEE VOLUNTARILY, EXPRESSLY, INTENTIONALLY AND KNOWINGLY WAIVE AND DISCLAIM ANY AND ALL RIGTH ANY OF THEM MAY HAVE TO TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, IN CONNECTION WITH OR IN ANY MANNER RELATED TO THE CONSIGNED VALUABLES, THIS MEMORANDUM OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WRITTEN OR VERBAL) OR ACTIONS OF EITHER PARTY HERETO.

11) Governing Laws and Situs. This Memorandum and legal relations between the Parties hereto shall be construed and enforced in accordance with the laws of the State of Florida and venue of all suites brought hereunder by and between the Parties shall be initiated, prosecuted and defended in Miami-Dade County, Florida. And the Parties expressly and voluntarily submit to the jurisdiction of the same.

12) Attorneys Fees. In the event of any litigation arising by virtue or related to this Memorandum, the prevailing party shall be entitled to a responsible sum as and for his or its or their attorneys' fees and court costs in such litigation.

Signature:_____ Name:_____ Date:_____

# Composite Exhibit "C"



**Chris (Hitmaker) Haimov**

> can go where you want to go to buy jewelry but you can't do what your doing.

> Glad u confirmed u over charged me. That's fine we'll deal with it.

> I need my jewelry today

> Take yours

> I'm not even in Miami

> I ain't taking shit back
> Until u make that watch right

> So that's how you want to do business? Take my stuff on hostage?

> So you lie to me. You told me you where coming to talk about it and now you fly out? That's how you do business?

Read 1/26/21

Tue, Jan 26, 8:09 PM

> Yo what we doing?

Tue, Jan 26, 9:44 PM

> ???

Delivered